UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHALANDA JENKINS | No. 3:14-cr-001 (SRU) |

### ORDER

On January 7, 2014, the United States (the "government") charged Shalanda Jenkins with one count of aiding and assisting in the filing of a false tax return in violation of 26 U.S.C. § 7206(2). Information (doc. 1). That same day, Jenkins appeared before Magistrate Judge William I. Garfinkel, waived indictment, and pleaded guilty to that count. (doc. 4) Shortly thereafter, I approved and adopted Judge Garfinkel's findings and recommendations. (doc. 9)

Upon review of the documents submitted for Jenkins's sentencing hearing, however, I became concerned that the facts underlying the offense conduct did not satisfy the *mens rea* element for the charged offense. At Jenkins' sentencing on August 12, 2014, I noted that the underlying factual information provided in the U.S. Probation Office's Presentence Investigation Report ("PSR") and the plea colloquy did not appear to set forth a sufficient factual basis for Jenkins to be culpable of violating section 7206(2). I accordingly continued the sentencing hearing and invited counsel submit additional briefing on the sole issue of *mens rea* and criminal culpability under section 7206(2). Defense counsel submitted an undocketed letter brief arguing that *mens rea* could be established under a "conscious avoidance" or "willful blindness" theory of culpability, and the government joined Jenkins on that letter brief.

For the following reasons, I must reject Jenkins' guilty plea as failing to establish the requisite *mens rea* for the underlying offense.

I.      **Background**

Jenkins worked at a tax return preparer at Tax Express, where she assisted in the preparation and submission of individuals' federal income tax returns. Presentence Investigation Report ("PSR") ¶¶ 6–7. The government alleges that Jenkins prepared thirty-one deficient or false tax returns for tax years 2009 and 2010 without the knowledge of her clients, resulting in a tax loss of $131,670 to the federal government. *Id.* ¶ 7. Those returns included submissions for inappropriate or inapplicable tax credits—such as education and child/dependent care credits—and erroneous Schedule C (business losses) attachments. *Id.* Significantly, Jenkins did not receive a financial benefit from the returns, nor did she collude with clients who filed erroneous returns to commit fraud or share in their proceeds. Def.'s Sentencing Mem. 6 (doc. 19).[1]

The parties stipulated to the following facts: Jenkins's work environment was "like a bar" in that employees frequently drank at work (or utilized other substances) with the knowledge and consent of management. *Id.* Jenkins noted that she drank on the job and that her workplace was "more like a bar than a place of business." *Id.* Tax Express's preparation software, however, had a known glitch that would populate forms for new clients with information from previously prepared returns (i.e., the software did not "reset" its values for each new tax return). *Id.* Jenkins was aware of this glitch, but in part because she was alcohol-impaired, she did not double-check returns for accuracy. *Id.* As a result, she often overlooked fields in which certain tax credits were improperly included in her clients' individual federal income tax returns. *Id.*

The offense with which Jenkins was charged requires a *mens rea* of willfulness. *See* 26 U.S.C. § 7206(2). During the plea colloquy before Judge Garfinkel, the AUSA stated that the

---

[1]. The PSR indicates that employees may have received bonuses based on the number of returns they completed. There is no indication that the bonus was based on the existence of a credit/refund received by a client, or on the dollar amount of the return or the potential refund. PSR ¶ 65. Ostensibly Jenkins would have received a commission on the thirty-one "false" returns even if the information in those returns had been accurate.

willfulness element was met because: "Ms. Jenkins had notice of the higher probability that the tax returns she prepared contained false information. Despite this knowledge, she consciously failed to verify that it was true and accurate." Colloquy Tr. at 18 (Jan. 7, 2014); *see also id.* at 31. Judge Garfinkel adopted the same language when questioning Jenkins about the adequacy of her plea: "And would you agree with [the AUSA's] representation that these returns had information of which there was at least a high probability of them being inaccurate? The information being inaccurate and that you knowingly, consciously did not make any effort to verify them, verify the information as true and accurate?" *Id.* at 35. Jenkins agreed with that characterization. *Id.* at 35–36. Her attorney, however, specifically stated that Jenkins "doesn't have a specific recollection of" the tax return referenced in the information. *Id.* at 34. The AUSA did not challenge that assertion or suggest that he had evidence to rebut it.

At the truncated sentencing hearing, the parties argued that, although her behavior was not intentional, Jenkins had either "consciously avoided" exercising care or had been grossly negligent or reckless in her preparation of the allegedly false returns. Jenkins's counsel noted that Jenkins would not stipulate to offense conduct considered to be more than "grossly negligent" or reckless, and Jenkins would not stipulate that she had a specific intent to violate a known legal duty. Instead, defense counsel noted that Jenkins had abrogated her duty of care as a tax preparer, invoking a common law theory of civil, not criminal, negligence.

## II. Discussion

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."

Jenkins was charged under 26 U.S.C. § 7206(2), which requires a *mens rea* of willfulness. The Supreme Court has defined "willfulness" as "a voluntary, intentional violation of a known [legal] duty." *United States v. Pomponio*, 429 U.S. 10, 12 (1976). In the context of tax fraud, that specific intent requires proof beyond a reasonable doubt that the defendant sought to evade or otherwise interfere with the federal government's tax enforcement efforts. *United States v. Bishop*, 412 U.S. 346, 360 (1973); *Ingram v. United States*, 360 U.S. 672, 680 (1959) (violator's objective must include evasion of federal taxes); *United States v. Aracri*, 968 F.2d 1512, 1523 (2d Cir. 1992) (specific intent required); *United States v. Gurary*, 860 F.2d 521 (2d Cir. 1988) (same). A showing of recklessness or gross negligence is not sufficient. *See United States v. MacKenzie*, 777 F.2d 811, 818 (2d Cir. 1985)*, cert. denied,* 476 U.S. 1169 (1986) (upholding a "conscious avoidance" instruction for the knowledge prong of the willfulness element of tax fraud where "the charge clearly informed the jury that actual knowledge was required and that recklessness was not adequate to prove willfulness").

In the present case, the government has failed to show that Jenkins had anything more than a reckless *mens rea*. The evidence discussed in the plea colloquy does not show that Jenkins was "practically certain" that her conduct would result in a false return because it appears that the incorrect tax credits occurred at random. Instead, at best, the government has thus far shown only that Jenkins knew that *some* of the returns would *likely* have errors if she failed to check them. That kind of probabilistic "knowledge" does not rise above the level of recklessness, and it certainly does not meet the high standard required for a showing of "willfulness," particularly as required for tax fraud. *See, e.g.*, *Ratzlaf v. United States*, 510 U.S. 135, 141 (1994) (in the context of 31 U.S.C. § 5322(a), explaining that the "willfulness" element includes, *inter alia*, "a specific intent to commit the crime, *i.e.*, a purpose to disobey the law") (internal quotation marks

4

and citation omitted); *Bryan v. United States*, 524 U.S. 184, 194–96 (1998) (explaining that the need for a heightened willfulness standard for tax crimes arises from a risk of "ensnaring individuals" with highly technical statutes). And that inference is bolstered by the strong similarity between the language used during the colloquy and the recklessness definition in the Model Penal Code. *Compare* Model Penal Code § 2.02 (defining recklessness as "consciously disregard[ing] a substantial and unjustifiable risk"), *with* Colloquy Tr. at 35 ("[T]here was at least a high probability of [the information in the returns] being inaccurate? The information being inaccurate and that you knowingly, consciously did not make any effort to verify them . . . ?").

      Because the government has failed to show an adequate factual basis for the *mens rea* element of the offense, I cannot accept Jenkins' guilty plea. My initial acceptance of Jenkins' guilty plea is vacated. The parties should be prepared to discuss the implications of this order during a conference call to be scheduled shortly.

      So ordered.

Dated at Bridgeport, Connecticut, this 3rd day of June 2016.

                                              /s/ STEFAN R. UNDERHILL
                                              Stefan R. Underhill
                                              United States District Judge